UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| AMANDA ARDALE MCCOY, | ] | |
| Plaintiff, | ] | |
| vs. | ] | CV-04-CO-00008-S |
| COX RADIO, INC., et al., | ] | |
| Defendants. | ] | |

FILED
04 JUN -9 PM 2:29
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
JUN - 9 2004

MEMORANDUM OF OPINION

I. Introduction.

Presently before the court is Plaintiff's Motion to Amend Complaint [Doc. #10] and Plaintiff's Motion to Remand [Doc. # 11] as well as the responses of the defendants. Plaintiff seeks to amend the complaint by adding non-diverse parties, Dave Chapman ("Chapman") and Drew Thomas ("Thomas"), who were included by description as fictitious parties in the original complaint. Defendant, Cox Radio, Inc., ("Cox") opposes the amendment asserting that it would destroy diversity and require the case to be remanded to state court. Upon due consideration, and for the reasons

that follow, the plaintiff's motions will granted.

II.     Facts.

On December 8, 2003, Amanda Ardale McCoy ("McCoy") filed a complaint in the Circuit Court of Jefferson County, Alabama, against Cox as well as various fictitious parties including "F, G, H, I and J being those individual persons, who made the below-referenced statements calling themselves 'the Daredevil Team' on 95.7 JAMZ radio." On January 5, 2004, Cox removed the case to the Northern District of Alabama based on diversity jurisdiction.

In her complaint, McCoy asserts that part of the Cox radio station programing includes individuals who call themselves "the Daredevil Team." According to McCoy, on September 7, 2003, "the Daredevil Team" entered her place of employment and accused her of providing sexual favors for money. McCoy alleges that all of "the Daredevil Team's" statements were broadcast on 95.7 JAMZ.

The court entered a scheduling order [Doc. # 9] setting April 12, 2004, as the last day McCoy would be permitted to add parties to her suit. The identity of Chapman and Thomas was not made known to or discovered by

McCoy until the end of February 2004.[1] McCoy moved to add Chapman and Thomas on March 10, 2004, well within the time limit set for the addition of parties. Cox filed a timely objection to the Motion to Amend Complaint.

III.  Standard.

"If after removal, the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C.A. § 1447(e). The decision of whether to permit the joinder is within the court's discretion, but the court cannot decide the merits of the dispute if the court allows the diversity destroying party to be joined. *Ingram v. CSX Transp., Inc.*, 146 F.3d 858, 862 (11th Cir. 1998).

"In determining whether to allow the amendment, the court should examine the following factors: (1) the extent to which the purpose of the amendment is to defeat federal jurisdiction, (2) whether the plaintiff has been dilatory in asking for the amendment, (3) whether the plaintiff will be

---

[1] McCoy alleges in her reply brief that she did not know the identity of Chapman and Thomas until it was provided by Cox through discovery at the end of February 2004 — after the removal of the case from state court. This court assumes that if Cox could dispute McCoy's position on knowledge, it would have done so in an appropriate pleading.

significantly injured if the amendment is not allowed, and (4) any other factors bearing on the equities." *Sexton v. G & K Services, Inc.*, 51 F. Supp. 2d 1311, 1312 (M.D.Ala.1999) (citing *Hensgens v. Deere and Co.*, 833 F.2d 1179, 1182 (5th Cir.1987).

IV.   Discussion.

    A.   Purpose to Defeat Federal Jurisdiction.

The first factor the court should consider is whether the amendment is sought for the purpose of defeating federal jurisdiction. Cox has presented no credible argument that McCoy seeks to add Chapman and Thomas just for the purpose of destroying the court's jurisdiction. In the original complaint, McCoy described Chapman and Thomas as fictitious parties. "Alabama's fictitious party practice rule, contained in Rule 9(h), provides that when a party is ignorant of the name of an opposing party and so alleges, that party may designate the opposing party by any name and amend its pleading to substitute the opposing party's true name when the true name is discovered." *Saxton v. ACF Indust., Inc.*, 254 F.3d 959, 964 (11th Cir. 2001) (citing Ala. R. Civ. P. 9(h)).

McCoy did not know the identity of "the Daredevil Team" when she

filed her complaint and so she utilized Alabama's fictitious party practice to make clear her intention to add them when their identity was made known to her. If she had known their identity prior to filing suit or failed to include a description of the "Daredevil Team" as fictitious parties in her original complaint, an amendment to add them after removal could be considered as evidence of a "purpose to defeat federal jurisdiction." Instead, McCoy's actions indicate that the purpose of adding Chapman and Thomas was to seek recovery against them, not to defeat the court's jurisdiction.

B.   Dilatory Amendment.

The court must next consider whether McCoy was dilatory in amending her complaint. McCoy moved to amend her complaint not only within the time limit set by the court but within as little as two weeks from discovering the true identity of "the Daredevil Team."[2]  Oh, the problems that could be avoided if all legal contestants acted with such promptness.

---

[2] The court assumes two weeks but acknowleges it could have been more. Plaintiff describes the point of enlightenment as the "end of February" in her reply brief. She moved to amend her complaint on March 10, 2004. The difference, if any exists, between the period of inactive informed bliss and the court's calculation of "two weeks" is not worthy of discussion.

C.  Whether Plaintiff Will Be Significantly Injured If Amendment Is Not Allowed.

The third *Hensgens* factor is the consideration of the injury that will be caused to McCoy if she is not allowed to amend her complaint to add the non-diverse defendants. Cox argues that McCoy would not be "significantly injured" if the amendment is not permitted. In support of this position, Cox insinuates that McCoy will not have any difficulty collecting any judgment she might obtain against Cox.[3] Cox further insists that McCoy can file a separate action against Chapman and Thomas in state court. It cannot be disputed that a plaintiff has the right to seek relief from any party that has caused her injury when the offending party's conduct constitutes an actionable tort. If she is forced to maintain separate actions, one in state court and one in federal court, not only would she incur extra expense and be required to duplicate her efforts, but the court system would have its limited resources wasted.

---

[3] Cox maintains that McCoy will not recover any judgment in this case. Cox makes this argument not as an admission that McCoy will obtain a judgment, but to assert that if McCoy is successful, she will be able to collect on her judgment.

### D. Other Equitable Factors.

The court should additionally examine any other factors that "bare on the equities." Equitable is defined as "[j]ust; conformable to principles of justice and right. Existing in equity; available or sustainable in equity, or upon the rules and principles of equity." *Black's Law Dictionary*, 482 (5th ed. 1979). Equity is defined as "[j]ustice administered according to fairness as contrasted with the strictly formulated rules of common law." *Id*. "Other equitable factors" would thus be other factors that evidence what would be fair and just considering all of the circumstances.

Other than Cox's assertion that McCoy's motion would further her "interest in forum-shopping, not justice," the court finds little in the form of other equitable factors that support the denial of the amendment. As stated in the discussion of the injury to McCoy from the refusal to permit the amendment, the interests of the justice system would be better served by one trial of McCoy's claims. Separate trials would not only be more expensive to the taxpayers who fund the state and federal courts, but would risk different and possibly inconsistent results all based on the same underlying conduct.

V.   Conclusion.

An application of the *Hensgens* factors clearly demonstrates that Plaintiff's Motion to Amend Complaint [Doc. # 10] should be granted. By necessity, Plaintiff's Motion to Remand [Doc. # 11] will also be granted. The court will enter an appropriate order in conformity with this memorandum of opinion.

Done, this ___ day of June, 2004.

                                        L. SCOTT COOGLER
                                        UNITED STATES DISTRICT JUDGE